IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SONY BMG MUSIC ENTERTAINMENT,  :
a Delaware general partnership; ARISTA  :
RECORDS LLC, a Delaware limited  :
liability company; UMG RECORDINGS,  :
INC., a Delaware corporation; and BMG  :
MUSIC, a New York general partnership,  :
                                          :        Case No. 2:08 CV 01200 WY

        Plaintiffs,  :

    v.  :

DENISE CLOUD,  :

        Defendant.  :

## PLAINTIFFS' RESPONSE TO DEFENDANT DENISE CLOUD'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. PRO 12(b)(6

Plaintiffs respectfully submit this response in opposition to Defendant Denise Cloud's

Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. Pro 12(b)(6) ("Motion to

Dismiss").

## INTRODUCTION

Plaintiffs brought this action for copyright infringement on March 11, 2008.  On May 2,

2008, Defendant moved for a more definite statement pursuant to Rule 12(e) of the Federal Rules

of Civil Procedure.  On August 22, 2008, the Court issued a Memorandum and Order (the

"August 22, 2008 Order," Dock. No. 15) denying Defendant's Motion for More Definite

Statement.  In the August 22, 2008 Order, the Court found Plaintiffs' "Complaint to be well

[pled] and to contain sufficient factual allegations to raise Plaintiffs' right to relief above the

speculative level, such that Defendant's Motion for More Definite Statement will be denied."

(*Id.,* p. 4.)  Thereafter, on September 5, 2008, Defendant filed a motion requesting that this Court

reconsider the August 22, 2008 Order or, in the alternative, seeking interlocutory appeal. (Dock. No. 16). In his Motion, Defendant specifically questioned the Court's ruling regarding, *inter alia,* the "materiality" requirement of 17 USC § 101 and "making available." On October 7, 2008, this Court entered an order denying Defendant's Motion for Reconsideration ("October 7, 2008 Order," Dock. No. 25). Defendant was then "**DIRECTED** to file an Answer within 20 days of the date of this Order." (*Id.*, p. 3 (emphasis in original).)

Instead of filing an Answer as directed by the Court, Defendant ignored the Court's Order and filed a Motion to Dismiss. Defendant's Motion to Dismiss merely reasserts arguments previously, and repeatedly, made by Defendant in her two previous Motions and rejected twice by this Court. Defendant is now also challenging the constitutionality of statutory damages for willful infringement, however, this is, at best, merely an affirmative defense does not have any bearing on whether Plaintiffs' Complaint states a claim for copyright infringement.

Plaintiffs have already fully briefed the issues raised in Defendant's Motion to Dismiss, except for Defendant's argument as to the unconstitutionality of statutory damages, in their previous responses and apologize for any repetition. As set forth herein and based on this Court's August 22, 2008 and October 7, 2008 Orders, Defendant's Motion to Dismiss should be denied.

<u>**BACKGROUND AND STATEMENT OF FACTS**</u>

Plaintiffs are major recording companies who own copyrights or the exclusive rights to copyrights in sound recordings. Collectively, they face a massive problem of digital piracy over the Internet. Indeed, the Supreme Court has characterized the magnitude of online piracy as "infringement on a gigantic scale." *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 940 (2005).

As a direct result of piracy over peer to peer ("P2P") networks, Plaintiffs have sustained and continue to sustain devastating financial losses. Indeed, the Department of Justice has concluded that online media distribution systems are "one of the greatest emerging threats to intellectual property ownership," estimated that "millions of users access P2P networks" and determined that "the vast majority" of those users "illegally distribute copyrighted materials through the networks." Report of the Department of Justice's Task Force on Intellectual Property, available at http://www.usdoj.gov/criminal/cybercrime/IPTaskForceReport.pdf at 39 (October 2004).

As the Seventh Circuit has held, "music downloaded for free from the Internet is a close substitute for purchased music; many people are bound to keep the downloaded files without buying the originals." *BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005). In addition, downloads from P2P networks compete with licensed broadcasts and undermine the income available to authors. *Id.* at 891. Plaintiffs' losses from online music piracy have resulted in layoffs of thousands of employees in the music industry. Unfortunately, infringing users of P2P systems are often "disdainful of copyright and in any event discount the likelihood of being sued or prosecuted for copyright infringement," rendering this serious problem even more difficult for copyright owners to combat. *In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003).

P2P users who reproduce or copy (download) or distribute (upload) copyrighted material violate the Copyright Act. *See Grokster*, 545 U.S. at 919-22 (noting that users of P2P networks share copyrighted music and video files on an enormous scale, and, as such, even the providers of those networks "concede infringement" by the individual users); *Aimster*, 334 F.3d 643. A copy downloaded, played, and retained on one's hard drive for future use is a direct substitute for a purchased copy — and without the benefit of the license fee paid to the broadcaster. *See*

#248247 v1 slc

*Gonzalez*, 430 F.3d at 891.

On June 13, 2007, a third-party hired by Plaintiffs, MediaSentry, detected an individual using the LimeWire file sharing service on the Gnutella P2P network to engage in copyright infringement. MediaSentry detected the infringement by logging onto the P2P network in the same fashion as any Internet user and viewing the files that this individual was distributing to other users. This individual had as many as 337 digital audio files on her computer and was distributing them for free both to Plaintiffs' investigators and to millions of others using similar P2P networks. On information and belief, this individual downloaded all or many of these 337 digital audio files without the permission of the record company copyright owners. In short, as an active user of a P2P network, this individual was distributing copyrighted sound recordings stored on her computer to others and downloading copyrighted sounds recordings from other users of the P2P network.

MediaSentry further ascertained that this individual used Internet Protocol ("IP") address 71.185.73.209 to connect to the Internet. Subsequently, Plaintiffs filed a "Doe" Complaint against this individual and, after obtaining a court order, issued a subpoena to Verizon Internet Services, Inc. ("Verizon") in order to determine who was responsible for the above-referenced IP address at the date and time in question. Verizon subsequently identified the Defendant, Denise Cloud, in response to the subpoena.

On March 11, 2008, Plaintiffs filed their Complaint against Defendant for copyright infringement. Plaintiffs' Complaint lists a sample of the sound recordings that Defendant was distributing without authorization. (Complaint at Ex. A.) As alleged in the Complaint, Defendant, without the permission or consent of the Plaintiffs, used a P2P network to download and/or distribute to the public each of these specifically identified sound recordings. (Compl., ¶

#248247 v1 slc

15.)

Defendant has now moved to dismiss the Complaint arguing that Plaintiffs fail to state a claim upon which relief can be granted.  Each of Defendant's four arguments fail: (1)  Contrary to Defendant's assertion, Plaintiffs' Complain does not rest on a theory of "making available," but alleges that Defendant downloaded and/or distributed.  Moreover, this Court, as well as court's throughout the country have held that making copyrighted sound recordings available for distribution violates the copyright holders exclusive right of distribution; (2) this Court has already held, twice, that Plaintiffs have adequately allege willful infringement; (3) contrary to Defendant's unsupported assertion, electronic files do satisfy the "materiality" requirement under the Copyright Act; and (4) Defendant's claim that statutory damages for willful infringement are unconstitutional is both incorrect and premature.   Accordingly, Defendant's Motion to Dismiss should be denied.

## ARGUMENT

## I.  LEGAL STANDARDS FOR MOTION TO DISMISS.

In resolving a 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff . . . and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citations omitted).  Furthermore, in light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), Plaintiffs' "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  Id. at 234 (quoting *Twombly*, 127 S. Ct. at 1965).

#248247 v1 slc

II.   **DEFENDANT'S "MAKING AVAILABLE" ARGUMENT DOES NOT RENDER PLAINTIFFS' COMPLAINT INSUFFICIENT AND IS INCORRECT AS A MATTER OF LAW.**

Defendant argues, without support, that Plaintiffs' Complaint fails because "making available" is the "centerpiece of Plaintiffs' case" and that "Plaintiffs are prosecuting this case solely under that theory." (Motion to Dismiss, pp. 1-2). Defendant fundamentally misconstrues Plaintiffs' Complaint. First, Defendant concedes that "Plaintiffs also allege that Defendant distributed copies to others." (*Id.* at 2.). As Defendant does not challenge that distribution violates the Copyright Act and concedes that Plaintiffs allege this in their Complaint, his "making available" argument is, at best, premature and does not render Plaintiffs' Complaint insufficient. Moreover, Plaintiffs' Complaint alleges that Defendant used "a P2P network to download and/or distribute to the public the Copyrighted Recordings." *See* Complaint, ¶ 14. Indeed, Defendant's argument is a 'red herring' because Plaintiffs have evidence of actual distribution of each of the Copyrighted Recordings identified in Exhibit A. They were actually distributed to MediaSentry. Because Plaintiffs have directly alleged that Defendant has infringed on, among other things, their exclusive right of copying, this Court need not reach the question of whether the distribution right subsumes the right of making available for distribution copyrighted works (the so-called right of "making available"). Indeed, several courts have so held. *See, e.g., Greubel*, 453 F. Supp. 2d 961; *Payne*, No. 06-CV-0051; and *Duty*, No. 05-CV-3744-PHX-FJM. As a result, this Court (and many others) have already held that Plaintiffs' Complaint adequately alleged a claim of copyright infringement in their Complaint. (October 7, 2008 Order, p. 2 n.1 (quoting August 22, 2008 Order, p. 4 (citations omitted)).)

Although premature, and unnecessary, if the Court were to consider the question of whether Plaintiffs can establish a violation of the exclusive right of distribution based solely on a "making available" theory, the law is clear that Defendant is simply wrong. This Court and

many others have held that "[a] plaintiff . . . can establish infringement by . . . proof that the defendant 'made available' the copyrighted work."  *Motown Record Co. v. DePietro*, Civ. No. 04-CV-2246, 2007 U.S. Dist. LEXIS 11626, *12-13 n.38. (E.D. Pa. 2007).

Section 106(3) of the Copyright Act grants a copyright owner the exclusive right to "distribute" copies of copyrighted works to the public by any means of transfer of ownership or by rental, lease or lending.  17 U.S.C. § 106(3).  By definition, a person who possesses the exclusive right to distribute works also possesses the exclusive right to make works available for copying by others.

This is precisely what the Supreme Court held in *Tasini*.  533 U.S. at 488 (2001).  In *Tasini*, several authors sued both newspaper publishers and electronic publishers (including NEXIS) for making the authors' copyrighted articles available for download on online databases like NEXIS.  *See id.* at 487.  The newspaper publishers had a license to "reproduce or distribute" the articles only as part of a compilation.  *Id.* at 498.  There was no allegation or proof of any actual transfer of files to the public in *Tasini*; rather, the authors alleged only that the publishers had "placed copies of the [articles] . . . into three databases" where they were "retrievable" by the public, and that the authors' distribution right had been infringed "by the inclusion of their articles in the databases."  *Id.* at 487.  The Supreme Court agreed, and held that "the Electronic Publishers infringed the Authors' copyrights by reproducing and distributing the Articles in a manner not authorized by the Authors . . . [and] that the Print Publishers infringed the Authors' copyrights by authorizing the Electronic Publishers ***to place the Articles in the Databases*** . . . ." *Id.* at 506 (emphasis added).

In addition to *Tasini*, courts, including this one, have routinely held that the unauthorized act of making copies available for download by others violates the copyright owner's exclusive

right to distribute its works. [1]  *See DePietro*, 2007 U.S. Dist. LEXIS 11626, *12-13 n.38 ("[a]

plaintiff claiming infringement . . . can establish infringement by . . . proof that the defendant

'made available' the copyrighted work.")  In fact, a court in the Western District of Texas in

*Maverick Recording Co. v. Harper,* Civ. No. 5:07-CV-026-XR (W.D. Tex. Sept. 16, 2008)

recently held that while "the Fifth Circuit has not ruled on ["making available"], this Court will

follow those other courts that have found a "make available" right in 17 U.S.C. Section 106(3)."

*See* Harper, slip. op. at p.6 and n.4 (attached as Exhibit B).  The Ninth Circuit also concluded in

*A&M Records, Inc. v. Napster, Inc.* that "users who upload file names to the search index for

others to copy violate plaintiffs' distribution rights."  239 F.3d 1004, 1014 (9th Cir. 2001); *see*

*also Perfect 10 v. Amazon.com, Inc.*, 487 F.3d 701, 718-19 (9th Cir. 2007) (confirming that

defendant who makes actual files available for distribution, not just links to files, "distributes"

them).  In *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628 (D. Md. 2006),

relying on *Tasini,* the court held that an online publisher violated a copyright owner's

distribution rights by posting the owner's copyrighted publications online.  *Id.* at 637-38 ("[B]y

---

[1] The United States Register of Copyrights has expressly determined that "making [a work] available for other users of a peer to peer network to download … constitutes an infringement of the exclusive distribution right, as well as of the reproduction right."  *See* Letter from Marybeth Peters to Rep. Howard L. Berman at 1, Sept. 25, 2002, *reprinted in Piracy of Intellectual Property on Peer-to-Peer Networks*, Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary, 107th Cong. 114-15 (2002) (attached hereto as Exhibit A.)  The Register of Copyrights' interpretation is entitled to particular respect.  *De Sylva v. Ballentine*, 351 U.S. 570, 577-78 (1956).

making available unauthorized copies of Plaintiff's publications, he has infringed its right to distribution.").[2]

This is nothing new since courts for decades have found book stores, music stores, and video rental stores who made copies of copyrighted works available without authorization liable for infringement. As the Fourth Circuit explained in holding a library liable for offering copyrighted genealogical material:

> When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public. At that point, members of the public can visit the library and use the work.

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). Likewise, video rental stores that hold copyrighted videos out for sale also violate the copyright holders' distribution right, even where no actual sale is consummated. *See, e.g.*, *Walt Disney Co. v. Video 47, Inc.*, 972 F. Supp. 595, 599 (S.D. Fla. 1996) (holding that a video rental store had infringed distribution rights, based on the seizure of videos "from the portion of the store where the videocassettes were available for rental"); *U2 Home Entm't, Inc. v. Wang*, 482 F. Supp. 2d 314, 317-18 (E.D.N.Y. 2007) (awarding statutory damages for offering to sell copies of the plaintiff's copyrighted television shows); *Columbia Pictures Indus., Inc. v. T&F Enters., Inc.*, 68 F. Supp. 2d 833, 835, 839 (E.D. Mich. 1999) (holding that the defendants violated the plaintiffs'

---

[2] *Accord Sony Pictures Home Entm't, Inc. v. Lott*, 471 F. Supp. 2d 716, 721-22 (N.D. Tex. 2007) (granting summary judgment to plaintiff motion picture companies based on evidence that copyrighted motion pictures were made available for download); *Warner Bros. Records, Inc. v. Payne*, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006) (holding that making copyrighted audio files available for distribution on a peer-to-peer network may violate the copyright owner's distribution right); *Interscope Records v. Duty*, 2006 WL 988086, at *2 (D. Ariz. Apr. 14, 2006) ("The mere presence of copyrighted sound recordings in [the defendant's] share file may constitute infringement."); *Playboy Enters., Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 509 (N.D. Ohio. 1997) (finding distribution without actual transfer, and rejecting argument that defendants "never 'distributed' [plaintiffs'] photographs to their customers because it was the customers *themselves* who chose whether or not to download" the photographs from defendants' server (emphasis original)); *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs. & Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1173-74 (N.D. Ill. 1997) (finding infringement without transfers, and noting that "once the files were uploaded, they were available for downloading").

distribution right by "[holding] these video cassettes out for distribution to the general public without authorization").[3]

In the face of this overwhelming authority, Defendant argues that "'making available' is at most, a form of vicarious or contributory infringement, not direct [infringement]." (Brief Supp. Motion to Dismiss, p.3.) Defendant incorrectly argues that this was the conclusion of the U.S. Supreme Court in *MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005). Contrary to Defendant's contention, the court in *Grokster* did not even address the theory of "making available" and the parties conceded that the users of the P2P networks at issue were committing copyright infringement. The Court was not addressing the question of liability of individuals users but instead found Grokster to be liable for contributory infringement for "distributing a device with the object of promoting its use to infringe copyright . . . ." *Id.* at 936. The *Grokster* case is not relevant to the "making available" question and Defendant's reliance on it is misplaced. Defendant also relies on a recent decision out of Minnesota, *Capitol Records, Inc v. Thomas,* Civ. No. 16-1497(MJD/RLE), rejecting the "making available" theory of copyright infringement. As the Court has already held, "[t]he rulings of the District Court of Minnesota are not binding on this Court . . . ." (October 7, 2008 Order, p.2 n.1.). Moreover, in light of the overwhelming authority discussed above, Plaintiffs respectfully submit that the *Thomas* decision was wrongly decided, and Plaintiffs are currently seeking an appeal of that Order.

---

[3] In similar contexts, courts routinely hold that the plain meaning of the statutory term "distribution" includes making an item available to others. *See, e.g., United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir. 2007) (holding that the defendant "distributed" child pornography by placing it in his KaZaA shared folder and making it available for other users); *United States v. Carani*, 492 F.3d 867, 876 (7th Cir. 2007) ("The notion that Carani could knowingly make his child pornography available for others to access and download without this qualifying as 'distribution' does not square with the plain meaning of the word.").

III.   **THIS COURT HAS ALREADY DETERMINED THAT PLAINTIFFS ADEQUATELY ALLEGED A CLAIM OF WILLFUL INFRINGEMENT.**

Once again, Defendant's argument that Plaintiffs failed to adequately plead willful infringement is identical to the argument previously asserted, and rejected, in his Motion for Reconsideration.  (Brief Supp. Motion for Reconsideration, p. 3-4; Brief Supp. Motion to Dismiss, p. 4-5.)  The Court has twice rejected Defendant's argument that Plaintiffs' failed to adequately plead willful infringement.  In its October 7, 2008 Order, the Court held as follows:

> [w]ith minimal supporting law, Defendant merely reiterates her position that the characterization of her actions as "willful" is unsupported and therefore not sufficient under Twombly.  As Defendant reiterates its arguments, this Court reiterates its rejection to them.  "Indeed, the Supreme Court expressly stated that Twombly does not impose any new requirement or heightened detail or specificity in pleading, relative to pre-existing standards under Rule 8."

(October 7, 2008 Order, p. 2 n.1 (quoting August 22, 2008 Order, p.3 n.3 (citations omitted).)  Based on the Court's prior rulings, Defendant's Motion to Dismiss Plaintiffs' claim of willful infringement should be denied.

IV.   **A DIGITAL COPY IS A COPY AS DEFINED BY THE COPYRIGHT ACT, THEREFORE, PLAINTIFFS HAVE ALLEGED A MATERIAL OBJECT.**

Defendant, once again, argues that because a P2P network transfers files digitally, such copies are not "material objects" and cannot violate the Copyright Act.  In its October 7, 2008 Order, the Court stated that this was a question of law that the Court would not specifically address because it was "outside the realm of consideration in deciding a Motion for More Definite Statement."  (October 7, 2008 Order, p.2 n.1.)  Similarly, Defendant's argument here is "outside the realm of consideration in deciding" a Motion to Dismiss.  However, to the extent the Court chooses to address this issue, Defendant's position that digital copies are not "material objects," fundamentally misconstrues the "materiality" requirement under the Copyright Act.

#248247 v1 slc

Materiality refers to a medium in which a work can be "fixed." *See* 17 U.S.C. §101.  Thus, any object in which a sound recording can be fixed, including the electronic files at issue here, is a material object under the Act.  Indeed, the Ninth Circuit specifically determined in *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), that, "in the electronic context, copies may be distributed electronically." *Id.* at 1162-63 (citing *New York Times Co. v. Tasini,* 533 U.S. 483, 498 (2001)).

To argue that a distribution must involve the transfer of tangible objects simply ignores the reality of electronic transmission, which, when they result in identifiable fixations on a recipient's computer, are the functional equivalent of receiving a tangible copy.  Arguing that such a transmission does not amount to a distribution needlessly, and inconsistent with the Copyright Act, anchors the concept of distribution to the long ago past, when the only way copies could be distributed was through the dissemination of tangible objects.  *See* Niels Schaumann, Copyright Infringement and Peer-to-Peer Technology, 28 Wm. Mitchell L. Rev. 1001, 1037 (2002).  Accepting Defendant's erroneous argument would effectively immunize all copyright infringement on the Internet from any liability whatsoever.  *See Tasini*, 533 U.S. at 490-91 (2001) (fundamentally assuming that electronic only distributions constitute material objects"); *Stenograph LLC v. Bossard Assoc., Inc.*, 144 F.3d 96, 101-102 (D.C. Cir. 1998) (reproduction of program in RAM creates a "copy"); *MGM Studios, Inc, v. Grokster, Ltd.,* 545 U.S. 913, 934-941 (finding that P2P networks could be secondarily liable for the direct infringement of their users by electronic transmissions that violated the distribution right); *In re Aimster Copyright Litig.*, 334 F.3d. 643, 645 (holding that file-swapping which involves the making and transmitting of digital copies of music, infringes copyrights.)

#248247 v1 slc

Defendant contends that the Second Circuit concluded in *The Cartoon Network LP v. CSC Holdings, Inc.*, 2008 U.S. App. LEXIS 16458 (2d. Cir. 2008), that "a digital copy in computer memory was not a 'copy' under the Copyright Act."[4] (Brief Supp. Motion to Dismiss, p. 4.) Defendant, however, completely misconstrues the holding of *Cartoon Network*. In *Cartoon Network,* the Second Circuit was asked to decide whether Cablevision was violating the copyrights held by numerous cable television programmers by allowing Cablevision to use its RS-DVR system to take "the contents from one stream of programming . . . and store[] it, one small piece at a time, in the BMR buffer and the primary ingest buffer." *Cartoon Network,* 2008 U.S. App. LEXIS 16458, *14.   Under *Cartoon Network,* if a digital copy satisfies both the embodiment requirement and the duration requirement, then a digital copy will be considered a copy as defined under the Copyright Act.  Defendant does not contend that Plaintiffs cannot satisfy either the embodiment or duration requirement.

Moreover, numerous courts around the country, the U.S. Copyright office, as well as the United States government have all reached the same result.  *See, e.g., Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002); *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823, 830-31 (C.D. Cal. 1998); *Marobie-FL, Inc. v. National Association of Fire & Equipment Distributors & Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997); *Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 513 (N.D. Ohio 1997); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 554 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999); *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 939 F. Supp. 1032, 1039 (S.D.N.Y. 1996); *Religious Technology Center, Inc. v. Netcom On-Line*

---

[4] Copies are defined under the Copyright Act as "material objects, other than phonorecords, in which a work is fixed by an method now know or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 101.

#248247 v1 slc

*Communication Services, Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995); *Playboy Enterprises,*

*Inc. v. Frena*, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993); DMCA Section 104 Report, at 79, at

http://www.copyright.gov/reports/studies/dmca/sec-104-report-vol-1.pdf (setting forth position

of Copyright Office); *Elektra Entm't Group, Inc. v. Barker,* Civ. No. 05 Civ. 7340 (KMK),

Statement of Interest of the United States of America in Opp'n to Defendant's Mot. to Dismiss

the Compl., p. 7-16 (S.D. N.Y. April 21, 2006) (attached as Exhibit C).

The digital copies of Plaintiffs' copyrighted sound recordings in Defendant's shared

folder are in fact copies under the Copyright Act and Defendant's Motion to Dismiss fails as a

matter of law.

## V.   DEFENDANT'S ARGUMENT THAT STATUTORY DAMAGES ARE UNCONSTITUTIONAL IS NOT A BASIS TO DISMISS PLAINTIFFS' CLAIM OF COPYRIGHT INFRINGEMENT.

As a preliminary matter, whether, at some amount, statutory damages can be

unconstitutionally excessive is not a basis to dismiss a complaint and does not have any bearing

on whether Plaintiffs' Complaint states a claim for relief.  And contrary to Defendant's bald

assertion, Plaintiffs are not asking for $150,000 per infringement, but instead are seeking

statutory damages, within the ranges prescribed by the Copyright Act, in whatever amount the

trier of fact seems fit to award.  However, to the extent the Court chooses to address Defendant'

assertion that statutory damages are, or may be, unconstitutionally excessive, Defendant's

argument fails and has been rejected repeatedly by courts around the country.  Moreover,

Defendant's unsupported argument that statutory damages are subject to the same limitations as

punitive damages completely ignores the very purpose for which Congress authorized statutory

damages under the Copyright Act.

A.     **The Copyright Act Demonstrates Congress' Intent to Allow a Plaintiff To Recover Statutory Damages.**

Under the Copyright Act, the plaintiff copyright owner in a civil case may recover "the copyright owner's actual damages and any additional profit of the infringer" or "instead . . . statutory damages."  17 U.S.C. § 504(a).  "Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages *whether or not* there is adequate evidence of the actual damages suffered by plaintiffs or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (emphasis added).  Indeed, "[s]tatutory damages have been made available to plaintiffs in infringement actions *precisely because of the difficulties inherent in proving actual damages and profits*, as well as to encourage vigorous enforcement of the copyright laws."  *Yurman Design, Inc. v. PAJ, Inc.,* 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (emphasis added).

Congress has carefully tailored the remedy of statutory damages and has revised section 504(c) several times since 1976 to *increase* the ranges of damages.  A Report of the Committee on the Judiciary explained that increases were needed to achieve "more stringent deterrent to copyright infringement and stronger enforcement of the laws."  H.R. Rep. No. 106-216, at 2 (1999).  The House Report elaborated in a way that resonates strikingly with the facts of this case:

> Many computer users are *either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct*.  Also, many infringers do not consider the current copyright penalties a real threat and continue infringing even after a copyright owner puts them on notice. . . .  In light of this disturbing trend, *it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct*.  H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

*Id*. at 3 (emphasis added).

#248247 v1 slc

In sum, the statutory damages provisions in the Copyright Act reflect a carefully considered and targeted legislative judgment intended not only to compensate the copyright owner, but also to punish the infringer, deter other potential infringers, and encourage vigorous enforcement of the copyright laws.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952); *On Davis v. The Gap, Inc.,* 246 F.3d 152, 172 (2d Cir. 2001); *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252 (2d Cir. 1992).  The wisdom of Congress' regime and the amounts set forth therein is not within the province of this Court to second guess.  *See Eldred v. Ashcroft*, 537 U.S. 186, 222 (2003) ("[T]he Copyright Clause empowers Congress to determine the intellectual property regimes that, overall, in that body's judgment, will serve the ends of the [Copyright] Clause . . . [and] [t]he wisdom of Congress' action . . . is not within [the Supreme Court's] province to second guess."); *ABC, Inc. v. PrimeTime 24, J.V.*, 17 F. Supp. 2d 478, 489 (D.N.C. 1998) ("Congress passed the Copyright Act . . ..  If Congress can create the right, it follows that it can also create the remedy").

**B.    Defendant's Argument That Statutory Damages Must Be Proportionate to Actual Damages Has Been Considered, And Rejected, by Numerous Courts.**

Defendant claims that the statutory damages are unconstitutionally excessive and disproportionate has been routinely rejected.  As the Supreme Court has made clear, there is no requirement that statutory damages be related to actual damages.  *See FW Woolworth*, 344 U.S. at  233.  *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), demonstrates this very point.  In that case, after the jury returned a verdict of $31.68 million for 440 infringements, the defendant moved for a new trial, arguing that the damages were "excessive."  *Columbia Pictures Television, Inc. v. Feltner*, Case No. CV 91-6847 ER (CTx), Order at 2 (C.D. Cal. June 10, 1999) (Exhibit D).  Denying the

#248247 v1 slc

motion, the district court held that a defendant cannot argue that the award was overly punitive, since the award amount fell squarely within the statutory range provided by the statutory damages provision of section 504(c). *Id.* (affirmed at *Krypton Broadcasting,* 259 F.3d at 1195). The court further held that "[t]o receive statutory damages, the Plaintiff did not need to prove the damages actually suffered." *Id.*

The Second Circuit reached the same conclusion in *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001).  In that case, a jury found that the defendant had willfully infringed the plaintiff's copyright in four pieces of jewelry and awarded statutory damages of "$68,750 per work infringed," two-thirds of the then-maximum of $100,000 per work. *Id.* at 113. Significantly, while the district court vacated the *punitive damages* award because "the jury was not presented with any evidence concerning damages" and did not find "any . . . lost profits whatever," the district court rejected defendant's argument that *statutory damages* under the Copyright Act must be "reasonably related to the harm." *Id.* at 462-63.  As the district court noted, ***"[s]tatutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits***, as well as to encourage vigorous enforcement of the copyright law." *Id.* (emphasis added).  The Second Circuit affirmed, noting that the award was "within the statutory range" and thus within the jury's "discretion." *Yurman*, 262 F.3d at 113-14. *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 458 (D. Md. 2004) (rejecting defendant argument that an award of copyright statutory damages should be limited to four times actual damages and subject to due process review, holding that "there has never been a requirement that statutory damages be strictly related to actual injury.").

#248247 v1 slc

In *SESAC, Inc. v. WPNY*, 327 F. Supp. 2d 531 (W.D. Pa. 2003), the district court sustained a $1.26 million verdict where actual damages (the cost of a license) were $6,000. Specifically rejecting the defendant's argument, also made by Defendant here, that statutory damages should be proportionate to damages sustained by Plaintiffs, the court concluded its opinion with an observation that applies equally here:

> [I]t is Congress' prerogative to pass laws intended to protect copyrights and to prescribe the range of punishment Congress believes is appropriate to accomplish the statutory goal. The Court should not interfere lightly with a carefully crafted statutory scheme by substituting its judgment for that of the legislature. In essence, that is what the defendants ask us to do.

*Id.* at 532.

Plaintiffs are aware of no case in which a court has reduced or set aside as excessive an award that fell within the range permitted by the Copyright Act. Moreover, Plaintiffs are aware of no case in which a Court has dismissed a claim of copyright infringement based on a finding that statutory damages under the Copyright Act are unconstitutional. As established above, statutory damages are constitutional. Defendant's argument to the contrary not only is incorrect but does not constitute a basis to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6).

## CONCLUSION

Based on the foregoing, Plaintiffs request that Defendant's Motion to Dismiss be denied and that Defendant is ordered to Answer Plaintiffs' Complaint immediately.

Dated: <u>November 21, 2008</u>      By:   <u>s/ Geoffrey L. Beauchamp</u>
                                            Geoffrey L. Beauchamp, Esq. (No. 40380)
                                            Geoffrey L. Beauchamp, P.C.
                                            1015 York Road
                                            Willow Grove, PA  19090
                                            Telephone:  (267) 781-0615
                                            Facsimile:  (215) 706-0895
                                            E-mail:  GLBLaw@comcast.net

                                            Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 21, 2008, a copy of the foregoing

**PLAINTIFFS' RESPONSE TO DEFENDANT DENISE CLOUD'S MOTION TO**

**DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO**

**FED. R. CIV. PRO 12(b)(6)** was served upon the Defendant via United States Mail at the

following address:

Lawrence E. Feldman, Esq.
Lawrence E. Feldman & Associates
432 Tulphocken Avenue
Elkins Park, PA 19027

☐ U.S. Mail, postage prepaid
☐ Hand Delivery
☐ Fax (   #   )
☐ Overnight courier
☒ Electronically via CM/ECF

s/ Geoffrey L. Beauchamp
Geoffrey L. Beauchamp, Esq. (No. 40380)
Geoffrey L. Beauchamp, P.C.
1015 York Road
Willow Grove, PA  19090
Telephone:  (267) 781-0615
Facsimile:  (215) 706-0895
E-mail:  GLBLaw@comcast.net

Attorneys for Plaintiffs

20

#248247 v1 slc

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership, | : | |
| | : | |
| | : | Case No. 2:08 CV 01200 WY |
| Plaintiffs, | : | |
| v. | : | |
| DENISE CLOUD, | : | |
| Defendant. | : | |

**[Proposed] ORDER DENYING DEFENDANT DENISE CLOUD'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. PRO 12(b)(6)**

This matter comes before the Court on the Defendant's Motion to Dismiss and Plaintiffs' Response in opposition thereto.  Having reviewed both Defendant's Motion and Plaintiffs' Response, the Court DENIES Defendant's Motion to Dismiss and orders Defendant to file an Answer within 10 days or default judgment may be entered.

**AND IT IS SO ORDERED.**

| Date: _____ | BY THE COURT |
|---|---|
| | |
| | _____ |
| | UNITED STATES DISTRICT COURT JUDGE |

#248247 v1 slc